THE PEOPLE OF NORTH CAROLINA on the relation of ROBERT NORFLEET *v.* H. L. STATON, Jr.

Where A was appointed Clerk of the Superior Court for the county of E, by the *de facto* Judge presiding in that judicial district; in an action brought against A to oust him from the office, by the appointee of one who had been declared Judge *de jure: Held,* that the appointment of A was valid, and the appointee of the Judge *de jure* was not entitled to the office.

(*Ellis* v. *Deaf and Dumb Asylum,* 68 N. C. Rep. 423, and many other cases cited and approved.)

PEARSON, C. J., and RODMAN. J., dissenting.

CIVIL ACTION in the nature of *quo warranto* tried before *Moore, J.* at Spring Term, 1875, EDGECOMBE Superior Court upon the following,

CASE AGREED :

1. The General Assembly by an act ratified —— 1874, directed that an election should be held on the 1st Thursday in August, 1874, for a Judge of the Second Judicial District.

2. Said election was held accordingly, and Lewis Hilliard, Esq., of the county of Pitt, having received a majority of the votes cast was declared duly elected, and was commissioned Judge, by his Excellency the Governor, August 26th, 1874, and took the oath prescribed by law.

3. At the same time an election was held in regular course for a Clerk of the Superior Court of Edgecombe county, the term of the then incumbent having expired, and one W. H. Duggan was elected to said office, who on the first Monday in September following asked the Board of Commissioners of said county, then in regular session, for further time to file his bond and qualify as Clerk, and the said Board granted him until the 14th day of September for that purpose.

4. On the said 14th day of September, the said Duggan failed to give bond as required by law, when said Board of Commissioners declared said office vacant and notified both said Hilliard and Hon. W. A. Moore of said vacancy.

5. On the 15th day of September, 1874, said Hilliard appointed W. A. Duggan to fill said vacancy, who on the 1st day of October, 1874, notified said Hilliard that he should be unable to give bond, and on the same day of October, 1874, said Hilliard appointed H. L. Staton, Jr., Clerk of said Court. On the 5th day of October said Staton was duly qualified as Clerk, before the Board of Commissioners for said county, and entered on the duties of said office and has continued therein ever since.

6. On the said 5th day of October, the relator Robert Norfleet, appeared before said Board after the reception of the bond of said Staton, but before his qualification, and presented an appointment, made and dated Sept. 17th, 1874, from Hon. William A. Moore, who was appointed by the Governor to fill the vacancy occasioned by the resignation of Hon. E. W. Jones in 1871, the term of office of the said Jones expiring in 1878, and offered to qualify as Clerk, tendering a good and sufficient bond, but said Board declined to qualify him and induct him into said office.

7. On the 7th day of September, 1874, being the day appointed for the holding of Hertford Superior Court, the first of the Courts of that district, said Hilliard proceeded to the court-house of that county in the town of Winton, and took the seat usually occupied by the presiding Judge. Shortly

thereafter, and before said Hilliard had said or done anything, said Moore came in and demanded of him the seat as Judge, which demand Hilliard refused, stating that he claimed to be the Judge, whereupon the said Moore declared the Court open for the transaction of business and directed the Sheriff, Isaac Pipkin, Esq., to make proclamation. This the Sheriff declined to do."

The case agreed sets out many other facts, not pertinent to the case as decided in this Court, and the same are therefore omitted. All other facts necessary to an understanding of the case as decided are stated in the opinion of the Court.

Upon the case agreed the Court gave judgment ousting the defendant, and in favor of the relator, and thereupon the defendant appealed.

*Smith & Strong, Howard & Perry* and *John L. Bridgers, Jr.,* for appellant.

*Fowle* and *Johnston,* contra.

READE, J. By reason of the failure of the person elected by the people, to qualify, there was a vacancy in the office of Superior Court Clerk for Edgecombe county for the term of four years. The Constitution provides that the Judge of the Superior Court should fill such vacancy.

Judge Moore had been the Judge for several years; but, in the opinion of the General Assembly, his term had expired; and an act was passed ordering an election by the people for Judge; and under that act Judge Hilliard was elected and qualified and took possession of the office, and held it, exercising all the duties and business of the office until he was ousted under a decision of this Court declaring the act under which he was elected, unconstitutional. So that it is now clear, that for all the time from his election, qualification and induction into office until he was ousted under the decision of this Court, Judge Hilliard was not the rightful Judge, but he was the Judge in fact.

While Judge Hilliard was the acting Judge, it was notified to him by the County Commissioners that there was a vacancy in the Clerkship ; and he filled the vacancy by the appointment of the defendant. The Commissioners also notified Judge Moore of the vacancy, and he appointed the relator. The defendant exercised the duties of the office until Judge Hilliard was ousted, without interruption. When Judge Moore resumed the office his appointee, the relator, claimed the clerkship, and Judge Moore decided in his favor and the defendant appealed.

The question is, what was the force and effect of the appointment of the defendant by Judge Hilliard ? Was the appointment valid for any purpose, or for any time ? If it was, then was it for the whole vacant term ? Or only for such time as Judge Hilliard should be in ? Or only until he, the defendant, could be ousted by direct proceedings against him ? Probably the whole inquiry can be covered by the question : Is the appointee of a *de facto officer* a rightful officer ? Or is he only an officer *de facto* like his appointor ? The burden of the very full argument for the relator, was to show that while the defendant was an officer, and his acts valid as to the public and third persons, yet, in a direct proceeding against him, as this is, he cannot set up his wrongful appointment in support of his claim to the office. This is unquestionably true, supported by all the authorities, if we admit that the defendant is a *de facto* officer. But that is the very question in dispute. Why is the defendant a *de facto* and not a *de jure* officer ? When the defendant is asked " by what authority do you hold the office ?" he answers, by the appointment of the Judge of the Superior Court. And when it is replied, but that Judge was only a Judge *de facto ;* the defendant rejoins, that may be so ; but all his necessary official acts were valid as to the public and third persons ; my appointment was a necessary official act, and therefore, valid ; and I became not a wrongful usurper, not merely a *de facto*, but a rightful officer ; just as

rightful as any judgment which he rendered or any act which he did.

I scarcely think it necessary to cite authorities to show the distinction between mere usurpers and officers *de facto* and *de jure*. A usurper is one who takes possession without any authority. His acts are utterly void unless he continues to act for so long a time or under such circumstances as to afford a presumption of his right to act. And then his acts are valid as to the public and third persons. But he has no defence in a direct proceeding against himself. A *de facto* officer is one who goes in under *color* of authority—as Judge Hilliard in this case, who went in under an election by the people, which was held by a valid act of Assembly—or who exercises the duties of the office so long or under such circumstances as to raise a presumption of his right; in which cases his necessary official acts are valid as to the public and third persons, but he may be ousted by a direct proceeding. A *de jure* officer is one who is regularly and lawfully elected or appointed and inducted into office and exercises the duties as his right. All his necessary official acts are valid and he cannot be ousted.

The only difference between an officer *de facto* and an officer *de jure* is, that the former may be ousted in a direct proceeding against him, while the latter cannot be. So far as the public and third persons are concerned, there is no difference whatever. The acts of one have precisely the same force and effect as the acts of the other.

The decisions in our own Court may be found in *Burke* v. *Elliott*, 4 Ire., 355; *Gilliam* v. *Riddick*, Ib. 368; *Commissioners, &c.*, v. *McDaniel*, 7 Jones, 107; *Swindle* v. *Warden*, Ib. 575; *Keeler* v. *Newbern*, Phil. Rep., 505; *Culver* v. *Eggers*, 63 N. C. Rep., 630; *Ellis* v. *Deaf and Dumb Asylum*, 68 N. C. Rep., 423. And in *State* v. *Carroll*, lately decided in Connecticut and reported in 12 American Law Register, 165, in an elaborate opinion by Butler, Chief Justice, the English and American cases are reviewed and satisfactory definitions given of mere usurpers, whose acts amount to nothing, and of

*de facto* and *de jure* officers, whose acts are alike good so far as the public and third persons are concerned. And we think it may now be considered as settled by our own decisions and by the English and American cases and by the text writers, that there is no difference between the acts of *de facto* and *de jure* officers so far as the public and third persons are concerned. Indeed, we understand that to be admitted in this· case to be the rule. But it is insisted that there is this excep. tion : that while *de facto* officers—such as Hilliard was— might appoint an officer, such as the defendant, yet his appointee could not be more than he was, a *de facto* officer.

If there is or ought ·to be any such exception, surely it would be found in some case or writer upon the subject, and yet we have not been referred to any, and our own diligent researches have found none. We find but two cases bearing on it, and their weight is against the exception. In *Rex* v. *Lisle*, in 1738, Goldwire took possession of the office of mayor and nominated Lisle as a burgess. And in *quo warranto* v. *Lisle*, the Court said there were two questions : "The first was whether Goldwire was mayor *de facto* at the time he made the appointment ? The second was whether, if he was, his appointment of Lisle was good ?" Now if the Court had decided that Goldwire was mayor *de facto*, and that his appointee, Lisle, was not valid, or only valid as a *de facto* appointment, then it would have supported the exception. But the Court decided that Goldwire was a mere usurper and not even a mayor *de facto*. And then they decided that Lisle was not a burgess, because his nomination was not by a *de facto* mayor. It is true the Court does not say expressly that the appointment would have been good if the mayor had been a *de facto* officer ; but is not that a fair inference ? And the Court said further : "Suppose Goldwire was a mayor *de facto*, yet the appointment was not good, because it was not *necessary* to the preservation of the corporation." Is not that the same as to say that if Goldwire had been mayor *de facto* and the appointment of Lisle had been necessary, then the appointment was

good ?　So in our case, if Hilliard was Judge *de facto,* and the appointment of a clerk was necessary, as clearly it was, then the appointment of the defendant was good.　In *Ellis* v. *Deaf and Dumb Asylum,* the *de facto* Board removed Ellis and appointed another as steward, and this Court said, " We hold that acts of this *de facto* Board, in the discharge of the ordinary duties of the Board, are to have the same force and effect as if made by a regular legal Board."　68 N. C. Rep., 423.　That is decisive of this case.

It is respectful to notice some of the objections to our views :

1. It is said that the doctrine that the acts of *de facto* officers are valid, is founded in public convenience, and that when the reason ceases the rule ought to cease.　And that while it would be a great public inconvenience to declare void all the judgments in civil and criminal cases which Judge HILLIARD has rendered, and all the other official acts which he did ; yet it would be no inconvenience to the public to oust the defendant as clerk and put in the relator.　The public convenience can be as well subserved by the relator as by the defendant.

To that there are two objections.　In the first place, the authority is, that the Judge should fill the vacancy.　That means that he should fill it full for the whole time and not for a part. In the second place, if the doctrine be true that the appointee of a *de facto* officer is good only so long as the appointor shall be in office, then all the appointments which the defendant has made as Clerk must go out with him :—all the magistrates, guardians, administrators, &c., which he has appointed must go out.　I may add a third objection : The convenience of the public is not the only reason given for the rule, but the convenience of the public *and* " *third persons.*"　The appointees are the " third persons " whose convenience and rights are to be respected.　If the defendant in a suit against his debtor had recovered a judgment for $1,000 before Judge HILLIARD, it would be no inconvenience to *the public* if that judgment should be vacated ; but it would interfere with the defendant's rights ; and therefore it must stand.　And so, when the defendant was

induced to accept an office for the public and to take oaths, execute bonds with sureties, incur penalties and obligations and perform labor and incur expenses his rights must be respected.

2. In the second place it is objected that it is contrary to fundamental principles that a *de facto* officer, Judge HILLIARD, should have the power to appoint an officer *de jure*; that any but a rightful officer should appoint a rightful officer, that a stream should rise higher than its source;—"who drives fat oxen must himself be fat."

The error is in supposing that HILLIARD makes the appointment. It is the "Judge of the Superior Court" whoever he may be, and however he happens to be Judge, and whether rightfully or not. He who is in the office clothed with its *insignia*, has the *power* of the *office*. And it cannot be maintained that HILLIARD had the power to appoint the defendant for only so long a time as HILLIARD should act as Judge, and that when HILLIARD went out the defendant went with him; for HILLIARD could make the appointment only according to his authority, and the Constitution is express that "he shall appoint to fill the vacancy until an election can be regularly held." And there is certainly no authority for HILLIARD's filling the vacancy in part and MOORE in part.

Why should the necessary official acts of *de facto* officers when operating upon a *person* be of less validity than when operating upon a thing? Why is not his appointing to office of the same force and effect as his judgment for money? If he performs the marriage ceremony, is it void? Of course not. At every term of this Court we license a number to practice law; if it should turn out that we are only justices *de facto*, are the license void?

We are of the opinion that the defendant is rightfully in office until the next regular election.

There is error. This will be certified, &c.

PEARSON, C. J., and SETTLE, J., dissent.