## STATE v. HALL.

(Filed December 18, 1906).

*Plea Denying Existence of Court—Jurisdiction—Appeals.*

1. The plea of the defendant that the Court was unlawfully called and organized because the Governor was absent from the State when he attempted to order the holding of the Court was properly overruled, as the plea is subversive of itself.

2. The legal existence of a Court cannot be drawn in question by a plea to the jurisdiction, for such a plea presupposes that the Court was regularly called and organized, as jurisdiction means the right to hear and determine causes between litigants, which nothing but a Court can do.

3. A plea denying the very existence of the Court before which the plea is filed is unknown to the science of pleading, for no Court can pass upon the validity of its own constitution and organization. It must always decide that it is a Court, because the moment it is admitted that it does not exist, and has never existed, as a legal entity, so to speak, it is at once settled that it never had the power to decide anything, not even the plea denying that it ever was a Court.

4. This Court can acquire jurisdiction to correct errors only where they have been committed by a Court, constituted and organized according to law or recognized as having the essential attributes of a properly constituted tribunal, and competent to exercise jurisdiction of controversies between litigants.

INDICTMENT against George Hall, heard by *Judge B. F. Long* and a jury, at the August (Special) Term, 1906, of the Superior Court of ROWAN.

The defendant was indicted for conspiring with divers persons to break and enter the common jail of Rowan County, with the intent to kill Nease Gillespie, John Gillespie and Jack Dillingham, therein confined as prisoners.

"Before pleading to the indictment and before announcing his readiness for trial, the defendant filed a plea to the jurisdiction of the Court, and moved the Court not to proceed with the trial, and for the discharge of the defendant. The motion was based upon the affidavit of the defendant, which

was then filed, and which is in the following words and figures, namely: 'The defendant, George Hall, being duly sworn, says: That he is advised and believes, and so avers, that this Court is without jurisdiction to try him for the offense charged in the bill of indictment. That he is informed and believes that this special term of court was ordered and the commission of Hon. B. F. Long, the Judge presiding, issued by Robert B. Glenn, purporting to make said order and to issue said commission by virtue of his alleged office as Governor of North Carolina; whereas, affiant is informed and believes said Robert B. Glenn, at the time of making said order and the issuing of said commission, was wholly without authority or warrant of law for so doing, being, as affiant is informed and believes, at said time, to-wit, on the 17th day of July, 1906, and for many days prior and subsequent thereto, absent from the State of North Carolina, and actually in the State of New Jersey, and defendant is advised and believes that his said action, while so absent from the State, was wholly without warrant of law, unlawful and void, and that all proceedings thereunder are and have been unlawful and void, and that this Court is without lawful constitution or jurisdiction to try this case against affiant, or any other cause. Wherefore defendant demands that he go without day.' "

In support of this motion, defendant introduced Hon. Robert B. Glenn, Governor of North Carolina, who testified as follows: "Q. You are the Governor of the State? A. Yes, sir. Q. I will ask you where you were on the 17th day of July, 1906? A. I was in Atlantic City, New Jersey. Q. You were absent from the State on the 17th day of July, 1906? A. I was in Atlantic City, N. J., on that day. Q. Governor, did you sign the commission of Judge Long to hold this Court? A. I sent a telegram to my private secretary and he signed the commission. I seldom sign commissions. Q. By the State: Did you direct and authorize him

to sign it? A. I did. He could not get the Lieutenant-Governor, and he applied to me. I got this telegram at Atlantic City, and as it needed attention at once, I ordered the Commissioners to hold this special term of court, because I wanted to stop this lynching in North Carolina. This signature (to the commission which was produced by the Judge) is my signature, but it is stamped with a rubber stamp. I ordered it on a telegram, and directed my private secretary to give this order and stamp my name. I directed him to order a special term of court commencing 6 August, 1906." The commission of Judge Long was then introduced. It is in the usual form, and it is not necessary to set it out in full.

The Court, in passing on the defendant's plea to the jurisdiction, considered the minutes of the Board of County Commissioners relating to the special term, and those minutes were made a part of the case. They show that a special meeting of the board was called on 17 July, 1906, to take action in regard to the Governor's notice to the chairman that the special term had been ordered for the trial of criminal cases, to begin on 6 August, 1906, and continue for one week, and that a grand jury had also been ordered to be drawn and summoned for the term. The Board directed that notice of the term be published and that jurors drawn by them in that meeting be summoned by the Sheriff of the county.

The defendant objected to the introduction of the minutes. The objection was overruled and he excepted. The Court, upon consideration, overruled the plea to the jurisdiction, and the defendant excepted. There was a verdict of guilty. The defendant moved for a new trial and in arrest of judgment, for the same reason which he assigned in support of his plea. The motions were overruled and he again excepted.

Judgment having been entered upon the verdict, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* and *Walter Clark, Jr.,* for the State.

*T. F. Kluttz* for the defendant.

WALKER, J., after stating the case: As we view the case there is but one question presented for our decision. When he was called upon to answer the indictment, the defendant entered what is called a plea to the jurisdiction of the Court, but in the formal statement of the grounds of his objection to the further prosecution of the case, he does not, either in fact or in a technical sense, attack the jurisdiction of the Court, but he denies its right to proceed against him solely upon the ground that the Court was unlawfully called and organized, or, in other words, that it was not a court, never having had any legal existence under the law. Jurisdiction, when applied to courts and speaking generally, consists in the power to hear and determine causes. 12 Pl. and Pr., 116. It presupposes always, and of course, that there is a court to exercise it, for it is not predicable of anything but a lawfully existing tribunal. It relates to the subject-matter of the controversy or to the person, and never is applied to any question touching the existence of the Court itself. It is not conferred until the Court designated to exercise it has been brought into being according to the mode prescribed by law. The defect here alleged is not that, if the Court had been properly called and organized, it would still not have had the necessary jurisdiction of the subject-matter of the prosecution and of the person of the defendant, but that there was no such court as that which pretended to indict and try him. This presents a somewhat different case from an exception to the right of a court, admitted to exist, to try a particular cause. The distinction is clear. *Burt v. Railroad,* 31 Minn., 475. We believe there is no such thing known to the science of pleading as a plea denying the very existence of the Court before which the plea is filed, and, in the nature

of things, there cannot be, for no court can pass upon the validity of its own constitution and organization. It must always decide that it is a court, because the moment it is admitted that it does not exist, and has never existed, as a legal entity, so to speak, it is at once settled that it never had the power to decide anything, not even the plea denying that it ever was a court. How can a body, having no legal existence, and consequently no judicial power or authority, decide anything? Therefore it is that jurisdiction, or the right to hear and determine, necessarily involves the idea that there is some tribunal having legal existence under the law to hear and decide. This is not by any means a new proposition. It certainly has the full sanction of reason and common sense, as it would be a legal solecism for a court to deny or disavow its own existence, and it is also, we think, supported by high authority. In *Beard v. Cameron,* 7 N. C., 181, the very question was presented to this Court. There, a plea to the jurisdiction was filed, and *Judge Henderson* said: "It is to my mind a very strange and incongruous proposition that an answer is required to be given by A B, whether he be a Judge, which answer he cannot give unless he be a Judge. I plead that you are not a Judge; a Judge alone can decide the plea; and I call on you to decide. This certainly cannot be the way of testing Judge Baker's appointment." And again: "It is said that the extent of the jurisdiction of all courts is settled by the courts themselves. This is true; but then it must be remembered that in all such cases there is a court competent to decide; and it is called upon not to decide whether it is a court, but the extent of its jurisdiction. The plea must, therefore, be overruled." That was a case in which the defendant pleaded to the jurisdiction because the Judge, as he alleged, had no authority whatever to preside over the Court—not even color of authority—and that he was no more than a private person, and consequently there was in fact, as well as in law, no court. With respect to this con-

tention *Chief Justice Taylor,* who delivered a separate opin-
ion, thus met the objection put forth in the plea: "The de-
fendant prays judgment if he ought to be compelled to
answer to the plaintiff in his said plea here depending.
Whom does he ask to pronounce this judgment? The person
who is asserted by the plea to be constitutionally incompetent
to render any judgment. If the person holding the Court
were not a Judge, duly authorized and rightfully commis-
sioned, he could render a judgment in no case; none of his
acts or proceedings could possess a judicial character, or be
capable of affecting, in any shape, the rights or property of
the citizen. It must be nugatory, then, to propound to the
person assuming this authority a question involving his
competency to decide; for that were to ascribe to his decision
authority which the very statement of the question denies it
to possess. If he were to decide that he is a Judge, and pro-
ceed to try the cause and give final judgment, no efficacy
could be imparted to such judgment by his decision; it would
be *ipso facto* a nullity, in the one case as well as in the other,
and no act of his could give it the force of *res adjudicata.*
The highest evidence of the opinion of a person acting in the
character of a Judge, that he has a right to do so, is exercis-
ing the functions of the office. This has already been given;
and the strength of such evidence is not increased by his par-
ticular opinion to the same effect expressed on a plea to the
jurisdiction." The *Chief Justice* did not mean here to deny
the proposition that there might be a Judge *de facto.* *State
v. Lewis,* 107 N. C., 967; *State v. Speaks,* 95 N. C., 689;
*Norfleet v. Staton,* 73 N. C., 546; *Burke v. Elliott,* 26 N. C.,
360; *Burton v. Patton,* 47 N. C., 124. He was discussing
the case upon the assumption of the defendant, as stated in
his plea, that the irregularity in the Judge's appointment
not only disqualified him and rendered him incompetent
to preside, but that it had the added effect of destroying the
existence of the tribunal itself, so that there could be no

court to hear and decide. It is difficult, and we think impossible, to distinguish that case from the one at bar. In principle they are the same, and the reason which prevailed with the Court in the one should control the decision in the other. It all comes to this, that by his plea the defendant has called upon the Court to deny its own existence and to exercise a judicial function in doing so, whereas, by the very nature of the plea, and, indeed, by its very terms, he avers that it has no such function because it has no existence in law.

If we treat the plea as technically one to the jurisdiction, we must, of course, first assume that the Court had a legal existence, for, as we have seen, it could not possess or exercise jurisdiction of any kind, either of the person or the subject-matter, unless it was a court. If we eliminate the plea, as one denying the existence of the Court, which we must do, and also exclude all evidence bearing upon it, as it must share the fate of the plea itself, we only have left the record proper in the case, which shows on its face, and without resorting to any extraneous facts, that the Court was regularly called, organized and held, so that the plea, regarded merely as one to the jurisdiction, but not to the existence of the Court, must be overruled, for the record proper shows that it had jurisdiction of the person and the subject-matter.

We do not understand that the defendant intended to raise any objection to the "jurisdiction of the Court," using that term in its only legitimate sense, but that he merely intended to challenge the right of the Court to exercise judicial authority under any circumstances, because in fact it was not a court recognized by the law. In either view the plea was bad and was properly rejected. Again, if there was no court to hear and determine, how is it that anything has been heard and determined? If the proceedings were void *ab initio* there was no indictment, no arraignment, no trial, and no judgment, and it follows, logically, that there was nothing to appeal from to this Court, and we have, therefore, no juris-

diction to review the proceedings. This Court can acquire jurisdiction to correct errors only where they have been committed by a court constituted and organized according to law or recognized as having the essential attributes of a properly constituted tribunal, and competent to exercise jurisdiction of controversies between litigants. We cannot entertain an appeal from anything except a court, or a person, such as a Judge, who is clothed with judicial power.

The reasoning by which the conclusion of this Court was reached in *Beard v. Cameron, supra,* is satisfactory to us, as it commends itself to our sense of the fitness of things and accords with our notion of the fundamental principles of the law relating to the formation and the peculiar functions of courts. The plea of the defendant that there was no court to indict and try him is subversive of itself, as it violates the maxim *ex nihilo nihil fit.* You cannot deduce the right to hear the plea from the premise that there was no court, for that is to deny and affirm at the same time.

As the plea must be overruled and as all the evidence introduced in its support must fall with it, there is nothing left for us to do but to inspect the record to see if there is any defect or error therein, and finding none and confining ourselves strictly to the question before us, we must declare that there was no error in overruling the plea of the defendant.

No Error.