## EQUITIES ARISING BY REASON OF SERVICES INURING TO THE BENEFIT OF THE PUBLIC.

Common Pleas Court of Hamilton County.

WILLIAM G. CALDWELL, A TAX-PAYER, v. STEVEN B. MARVIN ET AL.

Decided, May 18, 1909.

*Office and Officer—De Jure and de Facto Boards of Education—De Facto Board Ousted by Quo Warranto—Appropriation for Counsel Fees —Action to Enjoin Payment—Contract of Employment Invalid, but Obligation may be Paid—Application of the Burns Law.*

1. Although a contract for the employment of counsel is invalid, where made by a *de jure* board of education to test the title of the *de facto* board, yet, where the city solicitor espoused the cause of the *de facto* board, and the court has upheld the contention of the relators in the *quo warranto* proceeding, the mere invalidity of the employment is so far overcome by equities inuring to the benefit of the public, that a court of equity will not interfere with payment of the moral obligation thus incurred by enjoining its satisfaction out of the public treasury.

2. But where no certificate of the clerk, that the funds requisite for the payment of such a claim were in the treasury and unappropriated, was filed prior to the adoption of the resolution authorizing payment, as required by Section 2834b, the resolution is without effect and an injunction will lie against such payment.

*John R. Schindel* and *Ralph R. Caldwell*, for plaintiff.
*Burch & Johnson* and *Thorndyke, Fredriks & Capelle*, contra.

HUNT, J.

This action comes on to be heard upon the amended petition and the answer. No reply has been filed, but counsel have admitted that the facts alleged in the petition and the answer are true.

On May 25, 1908, the board of education of the school district of Cincinnati, consisting of twenty-seven members, pursuant to the act of May 9, 1908 (99 v. 585), met and selected four members by lot from its ward membership, who with the mem-

bers elected at large, pursuant to said act, were to constitute the board of education of the school district of the city of Cincinnati. Such board, commonly called the small board, thereupon assumed the direction of the school affairs of the district and exercised all the functions of the board of education of such district, and although the judgment of the circuit court has since declared such act to be unconstitutional, such board, although not the *de jure* board, was unquestionably the *de facto* board of education of the school district of Cincinnati.

On June 8, 1908, at the time which, according to the rules of the old or large board, the board of education would have had their next regular meeting, the members of the large board not included in the small board met and reconsidered their action. The city solicitor recognized the small board as the legal board and acted for such board. On that date the large board by resolution employed Messrs. Thorndyke, Fredriks & Capelle, attorneys at law, to bring any action necessary to contest the legality of the small board. The amount of compensation therefor was not fixed and no certificate of the clerk was made or filed as to funds being in the treasury to pay for such employment.

A *quo warranto* proceeding was brought by the president of the large board against the president of the small board. Messrs. Thorndyke, Fredriks & Capelle and Messrs. Burch & Johnson acted as attorneys for the relator. Such action resulted in the act of May 9, 1908, being declared unconstitutional by the circuit court of this county. A petition was promptly filed in the Supreme Court, but the case has not yet been heard upon its merits, although the Supreme Court refused to stay the execution of the judgment of the circuit court.. Thereupon, on April 22, 1909, the large board met pursuant to the call of its president and entered upon the discharge of the duties of the board of education of the school district of Cincinnati. At said meeting a resolution was passed authorizing and ordering the payment of the sum of $3,000 to Messrs. Thorndyke, Fredriks & Capelle and Messrs. Burch & Johnson. No certificate of the clerk as to the money being in the treasury was made or filed, although there was in fact, money in the treasury sufficient to pay such order.

The plaintiiff in this case, as a tax-payer of the school district, asks that the president and clerk be enjoined from drawing any order for the payment of such services and that the treasurer be enjoined from paying any such order.

It is claimed that such injunction should be granted because:

First. The large board at the time of the passage of such resolution was simply a *de jure* board, and as there was a *de facto* board, any act of a board simply *de jure* was invalid.

Second. The board has no authority to use school funds for the purpose of paying attorney fees or expenses incurred in a *quo warranto proceeding*.

Third. The resolution of employment passed on June 8, 1908, and the resolution providing for the payment of services rendered under such employment are both void, inasmuch as to neither was there any prior certificate of the clerk that funds were in the treasury to pay therefor.

Unless the Supreme Court reverses the judgment of the circuit court, there is no question but that the large board was the *de jure* board, and whatever the Supreme Court may do, there is no question but that the small board, although acting under an unconstitutional act between May 25, 1908, and April 22, 1909, was the *de facto* board, and that all of its acts during such period, as the board of education of Cincinnati, were valid acts. *Ex parte Strang*, 21 O. S., 607; *State v. Gardner*, 54 O. S., 24-30.

The validity of the acts of *de facto* officers is founded on principles of public policy; the public being more vitally interested in having public duties performed by some one than they are in the person by whom such duties are performed. Although the case of *People, ex rel.* v. *Staton*, 73 N. C., 546, goes beyond the reason of the rule, for the purposes of this case it may be conceded that the action of the large board on June 8, 1908, when it was simply a *de jure* board and not the *de facto* board, was invalid. *Mecham on Public Officers*, Section 322-323.

If the decision of this point was necessary for the purposes of this case, a distinction should be drawn between official acts affecting the public in whose interests the rule as to the validity of acts of *de facto* officers is recognized, and official acts of ap-

pointment to office which could be questioned in *quo warranto* proceedings without any detriment to the public.

It is claimed in this case that no valid contract could have been made by *any* board of education for services of attorneys in a *quo warranto* proceeding. The city solicitor, under Section 3977, was the legally constituted attorney or legal counsel of the board, and until he refused or failed to act, no additional legal counsel could be employed. When, however, he elected to act for the *de facto* board, and not for the board *de jure*, other counsel was necessary. The ordinary and necessary method of conducting a legal proceeding is with the assistance of legal counsel. If the right of a board of education to exercise some single power was challenged in a *quo warranto* proceeding, there would be no question of the implied right to employ counsel in the absence of legally constituted counsel, or upon the failure or refusal of such counsel to act. Why should the rule be different where the right to exercise any power, whatever, is questioned and proper to be established? The public is interested in having its legally elected officers perform their duties, even though less interested than in having such duties performed.

Section 2834*b*, as amended May 9, 1908, (99 v. 520), provides:

"That the board of education of any school district shall enter into no contract, agreement or obligation, involving the expenditure of money, nor shall any order for the appropriation or the expenditure of money be passed by * * * any board of education, unless the * * * clerk thereof shall first certify that the money required for the payment of such obligation or appropriation is in the treasury, * * * * * * ; and all contracts, agreements or obligations, and all orders or resolutions entered into or passed contrary to the provision of this section, shall be void."

It has been repeatedly decided, and defendants admit, that the absence of the prior certificate as to funds when required by the above section or similar sections invalidates the resolution so that in an action at law no recovery could be had against the board upon such resolution; nor could an action in *quantum meruit* be maintained for the value of any services rendered under any such resolution. *State* v. *Miller*, 58 O. S., 558;

*Buchanan Bridge Co.* v. *Campbell,* 60 O. S., 406; *City of Wellston* v. *Morgan,* 65 O. S., 219; *Village* v. *Diekmeier,* 79 O. S., 323-346.

Where, however, money has been paid in pursuance of such resolution for services rendered or property received, and the parties cannot be put in *statu quo,* no recovery for such money can be had. *State, ex rel,* v. *Fronizer,* 77 O. S., 7.

Nor does it necessarily follow that because a contract is void, if the services were such as could have been contracted for in the manner prescribed by statute, that they can not be paid for.

A tax-payer may ask for an injunction restraining the mis application of school funds (*Weir* v. *Dean,* 25 O. S., 143), but his petition is addressed to a court of equity, and the injunction will be granted or refused in accordance with equitable principles.

Mere illegality not involving any moral wrong when equitable rights have arisen, is not sufficient to obtain such injunction. Where services have been rendered or property obtained for which a valid contract could have been made, and the parties can not be put in *statu quo,* a court of equity will not interfere with the payment of the reasonable value of such services or property. Mere invalidity in the incurring of an obligation, although sufficient to destroy its effect as a legal obligation, where by the granting of an injunction public health or welfare would be seriously or irreparably jeopardized and where strong equities have arisen by reason of the expenditure of money or rendition of services which have and will innure to the benefit of the public, is not suffifficient to call into action the powers of a court of equity to enjoin. *Columbus* v. *Bohl,* 1 N. P.—N. S., 469; *State, ex rel,* v. *Board,* 11 C. C., 41 (affirmed in 53 O. S., 66); *Bauer* v. *Board,* 8 C. C.—N. S., 305; *Ampt* v. *Cincinnati,* 34 W. L. B., 111-112 (affirmed in 57 O. S., 669).

Where in addition to technical invalidity there are other equities sufficient to call into action the powers of a court of equity, an injunction will be granted upon the petition of a tax-payer. *Comstock* v. *Nelsonville,* 61 O. S., 288.

An act of justice by public officials, although not in discharge of a legal liability, will not be enjoined by a court of equity

where such act itself does not unnecessarily fail to conform to the methods and conditions prescribed therefor by law. If, however, compliance with statutory requirements by public officials is still reasonably possible without impairing existing equities, there is no reason for a court of equity refusing a petition by a tax-payer to enjoin an act involving the payment of public money not in compliance with such requirements.

The resolution of the large board on June 8, 1908, employing counsel, may therefore be conceded to be invalid, both for want of the prior certificate of the clerk and because the board was simply a *de jure* board. When, however, the large board was reinstated as the *de jure* and *de facto* board, it could recognize and pay a moral obligation incurred or resting upon it by reason of necessary legal services rendered. Nevertheless, in making such payments it must proceed in the manner prescribed by law, and before the present clerk could draw an order for the payment of money and before the treasurer could pay such order, a resolution by the Board of Education was necessary. Before such resolution had any force and effect under Section 2834b, a certificate of the clerk was necessary as to funds being in the treasury.

There was no such certificate made or filed prior to the resolution of April 22, 1909, and no reason is given for such omission. The payment of any money, therefore, under such resolution should be enjoined.

When an order is made or resolution passed after such prior certificate, even though in payment of a moral obligation, if such payment comes within the equitable principles above referred to, a court of equity will not interfere by injunction.