MRS. PEARL H. WATERS v. DR. PAUL McBEE.

(Filed 10 October, 1956.)

**1. Courts § 2—**

    A court has no power or authority to hear and determine matters in controversy beyond its territorial limits, but a limitation on its territorial jurisdiction has no reference to the kind or character of action of which the court may take jurisdiction or of the parties who may be subject to its jurisdiction.

**2. Courts § 11—**

The provisions of section 1, chapter 216, Public Laws of 1923 (G.S. 7-265), that courts created under the act should have jurisdiction "over the entire county in which the said court may be established" give such courts jurisdiction within the boundaries of its county notwithstanding that other courts may have been created with jurisdiction covering the same matters in other parts of the county, and do not limit such courts to causes of action arising within the county.

**3. Courts § 2—**

The jurisdiction of a court is the measure of its power to hear the matter in controversy and, by its judgment, bind those affected by the controversy.

**4. Courts § 11—**

A general county court has jurisdiction to hear a case of asserted malpractice when the court has jurisdiction of the parties. G.S. 7-279(3).

**5. Same—**

Where an action within the jurisdiction of a county court is instituted by a resident of the county against a nonresident, the general appearance of the defendant subjects him to the jurisdiction of the court, and the court has jurisdiction to hear the controversy.

**6. Courts § 2—**

While a defendant cannot by consent confer jurisdiction on a court, he may waive the issuance of process necessary to compel his attendance at the hearing of an action within the court's jurisdiction.

**7. Appearance § 1—**

The filing of motions for change of venue, as a matter of right and for the convenience of witnesses, constitutes a general appearance.

**8. Appearance § 2—**

A general appearance is equivalent to personal service and gives the court the same power over a defendant that it would have by due service of summons. G.S. 1-103.

Johnson, J., not sitting.

Appeal by defendant from *Froneberger, J.,* January 1956 Term of Buncombe.

Plaintiff instituted this action in the General County Court of Buncombe County. Summons issued on 13 September, 1954, to the sheriff of McDowell County. It was served 15 September. The complaint alleges that plaintiff is a resident of Buncombe County, defendant a resident of McDowell County, that in 1952 plaintiff employed defendant to treat plaintiff's broken hip, that defendant was careless and negligent in his treatment of plaintiff, resulting in permanent injuries to her damage. It appears from the complaint that the contract

of employment was made and the treatment rendered in McDowell County.

Defendant's answer does not deny the residence of plaintiff. It admits the residence of defendant and his treatment of plaintiff in Marion General Hospital in McDowell County. Defendant denies all allegations of negligence. He asserts that plaintiff's condition is congenital.

Having pleaded to the merits, defendant, by further answer and motion, asserts that the General County Court of Buncombe County did not have jurisdiction of the action for that: (1) defendant was a resident of McDowell County and had never resided in Buncombe County; (2) the matters and wrongs complained of did not occur in Buncombe County but in McDowell County; (3) plaintiff was a resident of McDowell County at the time of the asserted wrongs.

The General County Court heard the plea to its jurisdiction. It found that defendant was not and had never been a resident of Buncombe County but was a resident of McDowell. It found that plaintiff, at the time of the asserted wrongs, was a resident of McDowell County, but was, at the institution of the action, a resident of Buncombe County. It found that all matters complained of by the plaintiff and set forth as a basis for her alleged cause of action occurred in McDowell County, North Carolina. The answer and motion to dismiss for want of jurisdiction were filed 22 August, 1955. Defendant, on 2 October, 1954, filed a motion to remove the cause to McDowell County as a matter of right, and this motion was denied by the General County Court. This ruling was, on appeal to the Superior Court, affirmed. On 9 November, 1954, defendant filed in the General County Court a written motion for removal to McDowell County for the convenience of witnesses. The motion was denied, and the Superior Court, on appeal, affirmed. From the facts found, the General County Court of Buncombe County concluded it had jurisdiction. Hence it denied defendant's motion.

Defendant appealed from the County Court to the Superior Court. The Superior Court adopted as its own the findings of fact and conclusions of law made by the County Court and affirmed the judgment of the County Court. From the judgment of the Superior Court denying defendant's motion to dismiss for want of jurisdiction in the County Court, defendant appealed.

*I. C. Crawford and L. C. Stoker for plaintiff appellee.*

*Proctor & Dameron, W. E. Anglin, and McBee & McBee for defendant appellant.*

RODMAN, J. Before the limitation was imposed on the Legislature by sec. 29, Art. II of the Constitution, it could, by local act, establish in

any community courts inferior to the Superior Court. *Rhyne v. Lipscombe,* 122 N.C. 650; *S. v. Baskerville,* 141 N.C. 811; *Oil Co. v. Grocery Co.,* 169 N.C. 521, 86 S.E. 338; *McCall v. Webb,* 125 N.C. 243; *Jones v. Oil Co.,* 202 N.C. 328, 162 S.E. 741.

The limitation imposed on the Legislature by the amendment (sec. 29, Art. II) to establish local courts, tailored to fit the assumed needs of each locality, created a responsibility to provide a uniform system of sufficient breadth to meet all the varying conditions in the State.

The Legislature attempted to solve the problem in 1919. To accomplish the desired purpose, it enacted c. 277 of the laws of that year. That statute authorized local communities to establish local courts with differing territorial power but substantially the same jurisdiction. The courts authorized were Municipal Recorder's Courts, County Recorder's Courts, and Municipal-County Courts. The jurisdiction conferred was principally criminal. With slight modifications, the authority given by c. 277, P.L. 1919, to create these courts now appears as Articles 24, 25, and 26 of Chapter 7 of the General Statutes.

In only one instance did the statute confer extensive civil jurisdiction. Secs. 47 and 48 of c. 277 provide:

"Sec. 47.   The board of county commissioners of any county in which there is a city or town with a population of not less than ten thousand nor more than twenty-five thousand inhabitants, in which city or town there has been established a recorder's court, under the provisions of this act, or in which there is a recorder's court established by law, may confer upon such recorder's court jurisdiction to try and determine civil actions, wherein the party plaintiff or defendant is a resident of such county, as hereinafter provided; or where the plaintiff or defendant is doing business in said county, such jurisdiction may be conferred upon such court by resolution by the board of county commissioners of the county, which resolution shall be entered upon the minutes of the board."

"Sec. 48.   The jurisdiction in civil actions of such court shall be as follows:   (a) Jurisdiction concurrent with that of the justices of the peace within the county; (b) jurisdiction concurrent with the jurisdiction of the Superior Court in all actions founded on contract, wherein the amount involved exclusive of interest and costs does not exceed one thousand dollars; (c) jurisdiction concurrent with the Superior Court in all actions other than actions founded upon contract wherein the amount involved exclusive of interest and costs does not exceed the sum of five hundred dollars."

The population limitation for the creation of the court authorized by s. 47 of the Act manifestly limited the number of courts which could be created under the statute. So far as civil jurisdiction was concerned,

the statute of 1919 accomplished very little for the establishment of new courts.

Secs. 12 and 18 of this Act authorizing the creation of Municipal Recorder's Courts and County Recorder's Courts permitted them to issue process to any county in the State. Jury trials in these courts conformed to jury trials before a justice of the peace, but jury trials in courts authorized by s. 47 of the Act were with a jury of twelve. s. 52, c. 277, P.L. 1919.

Sec. 56 of c. 277, P.L. 1919, provides:

"Sec. 56. The rules of practice in the said court (that is, a court established pursuant to s. 47 of the Act) shall be the same as the rules of practice in the Superior Court, as near as may be, and processes and pleadings shall be issued and filed in the same manner as processes and pleadings in the Superior Court, as near as may be: *Provided,* that processes shall be returnable directly to this court in all cases: Provided, no civil process issued by any recorder's court in this State shall be issued to any county other than in which such court is located."

The Legislature of 1921 amended s. 47 of the Act of 1919, which had been codified as C.S. 1589, by adding at the end of the section: "and the board of county commissioners of any county may likewise confer civil jurisdiction on the county recorder's court to try and determine civil actions as hereinafter provided wherein one or more of the parties, plaintiff or defendant, is a resident of said county or is doing business therein." s. 7, c. 110, P.L. 1921.

Sec. 48 of c. 277, P.L. 1919, which had been codified as C.S. 1590, was also amended to name "municipal and county recorder's courts" as courts which could exercise the jurisdiction conferred by s. 48 of the Act of 1919.

The 1921 statute thus conferred extensive civil jurisdiction on each of the courts established pursuant to the authority given by c. 277, P. L. 1919.

But the jurisdiction thus conferred was limited as follows: (a) concurrent with that of a justice of the peace, (b) concurrent with the Superior Court in all actions founded on contract where the amount involved exclusive of interest and costs did not exceed one thousand dollars, (c) concurrent with the Superior Courts in all actions not founded upon contract when the amount did not exceed five hundred dollars, and (d) where one of the parties to the action was a resident of the county wherein the action was instituted.

Deeming the court system created by the 1919 Act (c. 277) as amended in 1921 (c. 110) not sufficiently elastic to meet the needs of the State, the Legislature of 1923 authorized the creation of a new system of courts. The authority to establish such courts is contained in s. 1, c. 216, P.L. 1923, which is as follows: "In each county of this State

there may be established a court of civil and criminal jurisdiction, which shall be a court of record and which shall be maintained pursuant to this act, and which court shall be called the General County Court and shall have jurisdiction over the entire county in which said court may be established." This is now the first sentence of G.S. 7-265.

Criminal jurisdiction was conferred on the General County Courts so authorized by s. 13 in the following language: "The general county court, herein provided for, shall have the following jurisdiction in criminal actions within the county." Then follow the first four subsections of G.S. 7-278.

Civil jurisdiction is conferred by s. 14, c. 216, P.L. 1923, in the following language: "The jurisdiction of the General County Court in civil actions shall be as follows." Then follows the same language found in the first five subsections of G.S. 7-279.

The authority of General County Courts to issue civil process and the rules of procedure in civil actions is defined by s. 7 of c. 216, P.L. 1923, as follows:

"The rules of procedure, issuing process and filing pleadings shall conform as near as may be to the practice in the Superior Courts. The process shall be returnable directly to the court, and no civil process, except subpoenas, shall issue out of the court to any county other than that in which the court is located."

This provision gave the General County Courts authority to require only those who could be found within the territorial confines of the court to answer in civil actions. Residence was not made a jurisdictional test as in 1921. Nonresidents of the county could voluntarily submit to its jurisdiction.

The Legislature of 1925 passed two acts dealing with the issuance of process by General County Courts established pursuant to c. 216, P.L. 1923.

Both acts were ratified 10 March, 1925, the day of adjournment. They are c. 242 and c. 250 of the Laws of 1925. The portions of each of these acts as pertinent to this controversy are as follows:

"That chapter two hundred and sixteen, section seven of Public Laws of one thousand nine hundred and twenty-three, be and is hereby amended by striking out all of said section and substituting in lieu thereof the following:

" 'The rules of procedure, issuing process and filing pleadings shall conform as nearly as may be to the practice in the Superior Courts. The process shall be returnable directly to the court, and may issue out of the court to any county in the State: *Provided*, that civil process in cases within the jurisdiction now exercised by justices of the peace shall not run outside of or beyond the county in which such court sits.' " s. 2, c. 242, P.L. 1925.

18—244

"Section seven of chapter two hundred and sixteen of the Public Laws of one thousand nine hundred and twenty-three be amended by adding thereto the following: '*Provided,* that in any civil action instituted in said general county court, where one or more bona fide defendants reside in said county and one or more bona fide defendants reside out of said county, then in such case, summons may be issued out of said general county court against the defendants residing outside of said county as well as those residing in said county, and the said general county court shall have jurisdiction to try the action as against all of said defendants.' " s. 2, c. 250, P.L. 1925.

It is apparent that the legislation of 1925 was intended to enlarge the power of the General County Courts to require parties to submit to its process.

By the 1923 Act (c. 216, s. 7) the only civil process which could issue outside of the county was a subpoena. Both of the 1925 Acts, c. 242 and 250, extended the power of the court to issue civil process outside of the county.

C. 250 extended the power to issue process outside of the county when one or more of the defendants reside in the county and one or more of the defendants reside outside of the county.

C. 242, enacted the same day as c. 250, expressly provided that process could issue to any county in the State, with a proviso that "civil process in cases within the jurisdiction now exercised by justices of the peace shall not run outside of or beyond the county in which such court sits." Thus c. 242 gave to General County Courts power equal to the power of the Superior Court as to those matters of which the Superior and General County Courts had concurrent jurisdiction but less power to issue process than a justice of the peace as to those matters of which the justice of the peace and the General County Court had jurisdiction, G.S. 7-138. An anomalous situation.

Construing c. 250 as relating to the issuance of process in actions involving matters within the jurisdiction of a justice of the peace, there is a uniform and harmonious pattern governing the issuance of process to acquire jurisdiction of parties.

Defendant asserts that lack of jurisdiction of the General County Court is apparent. He contends: (1) that the phrase "shall have jurisdiction over the entire county in which said court may be established," appearing in the statute, G.S. 7-265, authorizing the creation of the court, confines its right to hear and adjudicate only those questions which arose in the county where it sits; (2) that s. 2 of c. 250, P.L. 1925, limits the jurisdiction of the court when a defendant is not a resident of the county to those cases where there are both resident defendants and nonresident defendants, and, since there is only one defendant in this

action, and he is a resident of McDowell County, the Buncombe County General Court can have no jurisdiction.

The phrase "shall have jurisdiction over the entire county in which said court may be established" (G.S. 7-265) does not have reference to the kind or character of action of which the court may take jurisdiction nor of the parties who may be subject to its jurisdiction. It merely fixes the territorial limits within which the court may act. A court has no power or authority to hear and determine matters in controversy beyond its territorial limits. *Howle v. Express, Inc.,* 237 N.C. 667, 75 S.E. 2d 732; *Brown v. Mitchell,* 207 N.C. 132, 176 S.E. 258; *Investment Co. v. Pickelsimer,* 210 N.C. 541, 187 S.E. 813; 21 C.J.S., Courts, s. 20.

Because of the numerous courts which had been created by local act and under the authority conferred by the Act of 1919, it was desirable to make it clear that the General County Court had the right to exercise jurisdiction anywhere within the boundaries of the county notwithstanding the fact that other courts might have been created with jurisdiction covering the same matters in parts of the county. Had it been the intention of the Legislature to limit the jurisdiction of the General County Court to causes of action arising in the county, it would have been simple and appropriate for it to have inserted such a provision in s. 14 of the Act, prescribing the jurisdiction of the court. (G.S. 7-279.) No such limitation appears.

The jurisdiction of a court is the measure of its power to hear the matter in controversy and, by its judgment, bind those affected by the controversy. *Thompson v. Humphrey,* 179 N.C. 44, 101 S.E. 738; *White v. Lumber Co.,* 199 N.C. 410, 154 S.E. 620; *S. v. Hall,* 142 N.C. 710; *Jones v. Brinson,* 238 N.C. 506, 78 S.E. 2d 334; *Bullington v. Angel,* 220 N.C. 18, 16 S.E. 2d 411.

The power of the General County Court of Buncombe County to hear a case of asserted malpractice when it has jurisdiction of the parties cannot be doubted. The statute, G.S. 7-279(3), gives it concurrent jurisdiction with the Superior Court "in all actions not founded upon contract."

Since the court has jurisdiction of the subject matter with the right to hear within its territorial limits, the only other element essential to its jurisdiction is its authority to bind the parties. Plaintiff is seeking the aid of the court and hence is bound.

It will be noted that the section of the statute (s. 2, c. 250, P.L. 1925) on which defendant relies does not deal with the question of jurisdiction as such but only with one element necessary to invest the court with complete authority to hear and render judgment, namely, the power of the court to enforce the attendance of the defendant.

Defendant could not, by consent, confer on the court the power to hear a controversy not within the authority given it by the Legislature, but he could waive the issuance of process necessary to compel his attendance at the hearing. *Jones v. Brinson, supra; Brittain v. Blankenship, ante,* p. 518. A voluntary appearance of a defendant is equivalent to personal service of summons upon him. G.S. 1-103. The filing of the motions for change of venue, as a matter of right and for the convenience of the witnesses, constituted general appearances which gave the General County Court the same power over the defendant that it would have acquired over a resident of Buncombe County duly served with summons. *Grant v. Grant,* 159 N.C. 528, 75 S.E. 734.

The General County Court of Buncombe County there sitting has the authority to hear the matter in controversy. The parties have voluntarily submitted themselves to the court for the adjudication of the matters in controversy. All the tests of jurisdiction have been met. The judgment appealed from is

Affirmed.

JOHNSON, J., not sitting.